**David A. BERG, Appellant,**

v.

**DES MOINES GENERAL HOSPITAL CO., David L. Friedgood, Patrick Leong, and Jacob W. Miller, Jr., Appellees.**

No. 89–93.

Supreme Court of Iowa.

May 23, 1990.

Rehearing Denied June 20, 1990.

Davis L. Foster of Barker, Cruise, Kennedy, Houghton & Foster, Iowa City, for appellant.

David H. Luginbill of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for appellee Friedgood.

Kevin M. Reynolds of Whitfield, Musgrave & Eddy, Des Moines, for appellees Leong and Des Moines Gen. Hosp. Co.

Michael H. Figenshaw and Michael A. Klein of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee Miller.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL and ANDREASEN, JJ.

ANDREASEN, Justice.

In this medical malpractice action, the jury returned a verdict in favor of the defendant health care providers. The plaintiff appealed from the resulting judgment, challenging adverse discovery and evidentiary rulings. The court of appeals reversed the judgment, finding error in two pretrial discovery rulings. On further review, we vacate the court of appeals decision, affirming in part and reversing in part the district court judgment. We remand this case to the district court for further proceedings.

On October 31, 1985, David A. Berg went to a Des Moines General Hospital clinic at Southridge Mall in Des Moines because of some physical problems. Berg initially complained of, among other things, nausea and headache. Dr. Patrick Leong examined Berg and sent him to the hospital's emergency room to be examined by a neurologist. He arrived at the hospital at about 11:00 a.m. Dr. David L. Friedgood and Jacob W. Miller, Jr., a medical student, examined Berg. The attending nurses included Linda Todden, Elaine Peitzman, and, later, Renee Snodgrass. Tests eventually revealed Berg had a heart attack. This diagnosis was formed between 5:30 and 6:30 p.m.

Berg sued the hospital, Dr. Leong, Dr. Friedgood, Miller and the medical school at which Miller was a student.[1] Berg alleged the defendants were negligent in failing to diagnose a heart attack sooner than they did. He alleged the delay in diagnosis and reestablishment of circulation to his heart muscle caused irreparable damage to his heart. The primary factual dispute concerned the time at which the defendants should have known or investigated the possibility that Berg's symptoms resulted from a heart attack. Significantly, the defendants maintained Berg first complained of chest pain at 5:30 p.m. Berg alleged he complained of chest pain much earlier in the afternoon.

Before trial, Berg filed a motion to compel production of documents, seeking written summaries prepared by the nurses on November 5–6, 1985, concerning Berg's treatment the preceding October 31. The hospital requested the emergency room nurses to prepare these "confidential records of events" after Berg complained of the treatment he received. Berg admitted the statements were prepared in anticipation of litigation. The court allowed Berg access to a statement prepared by Snodgrass but denied him access to statements prepared by Todden and Peitzman. Berg also sought from the hospital and Dr. Friedgood the medical records of all patients for whom Dr. Friedgood had ordered electrocardiograms (EKGs) and cardiac injury panels (CIPs) since 1980. The hospital and Dr. Friedgood sought and secured protective orders precluding discovery of the patient files.

It should be noted the two tests relate specifically to the heart. The CIP test, in particular, measures the amount of a certain enzyme released from damaged heart muscle into the blood stream. The record shows Dr. Friedgood ordered the tests for Berg early in the afternoon. Berg sought to establish that ordering the tests shows suspicion of heart problems.

At trial, Berg filed a motion in limine to prevent Friedgood from testifying as to how often he orders EKGs and CIPs. The district court denied the motion. Also at trial, Dr. Friedgood remarked before the jury, "You know, Des Moines General has had some financial problems recently." The court granted Berg's motion to strike and instructed the jury to disregard the remark. Berg's motion for new trial was denied. On appeal, Berg challenges the district court rulings regarding the nurses' statements, the patient files, the motion in limine, and the alleged misconduct.

I. *Availability of Statements Prepared in Anticipation of Litigation.*

■ Discovery rules are to be liberally construed to effectuate disclosure of all

---

**1.** The court directed a verdict for defendant University of Osteopathic Medicine and Health Sciences at the close of plaintiff's case and it takes no part in this appeal.

relevant and material information to the parties. *Hutchinson v. Smith Laboratories, Inc.,* 392 N.W.2d 139, 140–41 (Iowa 1986). Under Iowa Rule of Civil Procedure 122(c), a party may obtain documents prepared in anticipation of litigation only upon showing that he has "substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." The federal counterpart of rule 122(c) is Federal Rule of Civil Procedure 26(b)(3). We have relied on federal cases in construing the Iowa rule. *See, e.g., Ashmead v. Harris,* 336 N.W.2d 197, 199–202 (Iowa 1983).

■ The requesting party has the burden of showing substantial need and undue hardship. *See Toledo Edison Co. v. G A Technologies, Inc.,* 847 F.2d 335, 340 (6th Cir.1988). Courts have broad discretion in determining whether the required showing has been made. *See Hutchinson,* 392 N.W.2d at 141; *Ashmead,* 336 N.W.2d at 201. This discretion is abused if it is clear the judge has applied an improper standard, failed to follow established legal rules, or has based the decision on a record devoid of facts to support the decision. *Toledo Edison,* 847 F.2d at 341. *See also Hutchinson,* 392 N.W.2d at 141; *Ashmead,* 336 N.W.2d at 199.

We have observed that witness statements have been discoverable where taken shortly after the event and lapse of time precludes obtaining the same through alternative means. *Id.* at 202 (citing *McDougall v. Dunn,* 468 F.2d 468, 474 (4th Cir. 1972); *Teribery v. Norfolk & W. Ry. Co.,* 68 F.R.D. 46 (W.D.Pa.1975); *Hamilton v. Canal Barge Co.,* 395 F.Supp. 975 (E.D.La. 1974)). Courts have recognized there is no substantial equivalent to an eyewitness statement taken immediately after an event. *See, e.g., Teribery,* 68 F.R.D. at 48; *Hamilton,* 395 F.Supp. at 978; *United States v. Murphy Cook & Co.,* 52 F.R.D. 363, 364 (E.D.Pa.1971). Therefore, mere lapse of time should normally be enough to show substantial need and undue hardship where statements were given by witnesses at almost the same time of the incident.

*Hamilton,* 395 F.Supp. at 978; *Butler v. Doyle,* 112 Ariz. 522, 544 P.2d 204 (1975).

■ However, where the requesting party has had opportunity to obtain the substantial equivalent of the documents sought and has failed to show efforts to do so, the court need not compel production of the documents. *See, e.g., Rhiner v. City of Clive,* 373 N.W.2d 466, 478 (Iowa 1985); *Schaffer v. Rogers,* 362 N.W.2d 552, 556–57 (Iowa 1985); *Ashmead,* 336 N.W.2d at 199. Consequently, each side is encouraged to prepare its case independently by not automatically having the benefit of the detailed preparatory work of the other side. *See Schaffer,* 362 N.W.2d at 557 (quoting *Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery,* 48 F.R.D. 487, 501 (1970)).

■ In this case, the court allowed Berg access to the statement prepared by Snodgrass but denied him access to the statements of Todden and Peitzman. At the time Snodgrass was deposed by Berg, she could not recall the events of October 31, 1985. Todden and Peitzman had some independent recollection of the events, but their recollection in large measure was dependent upon the medical records they were allowed to review prior to their depositions.

It is apparent the court denied Berg access to the statements of Todden and Peitzman because it found Berg had obtained the substantial equivalent of the statements by deposing the nurses and therefore had no substantial need for the statements. The court did not deny Berg access to the statements because of lack of diligence.

Under these circumstances, we believe the court abused its discretion in denying Berg's motion to compel production of the statements of Todden and Peitzman. The deposition testimony of Todden and Peitzman—taken over two years after the events—cannot be considered the substantial equivalent of the statements. These nurses recalled little of the events in question apart from the medical records they reviewed. The statements were prepared within a week of the events. They contain

only the statements of the nurses. The district court should have ordered production of the statements.

We add that the court and counsel should make the requested documents part of the record, if at all practicable, in order to facilitate appellate review. In this case, for instance, the documents could have been examined by the court in camera, sealed, and made part of the record either at the time of the requested discovery or at the time of the motion for new trial.

## II. *Patient Files.*

■ For good cause shown, the court may make any protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Iowa R.Civ.P. 123. The protective order may provide that discovery not be had. Iowa R.Civ.P. 123(a). A protective order precluding discovery is the most restrictive type of protective order. Ordinarily, a claim of undue burden and expense is not a sufficient reason for precluding discovery of relevant materials. *See Pollock v. Deere & Co.,* 282 N.W.2d 735, 739 (Iowa 1979). Rather, burdensomeness may, upon a proper showing, be a basis for limiting discovery. *Id.* By limiting discovery, the interests of both parties may be accommodated: the requesting party is allowed some access to the materials and the burden on the resisting party is minimized. *See id.*

In determining whether the discovery is unduly burdensome or expensive, the court may take into account "the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." Iowa R.Civ.P. 121(c)(3). A certain amount of inconvenience inheres in discovery and must be tolerated by the parties. *Pollock,* 282 N.W.2d at 739. Nonetheless, where the nature and complexity of the inquiry show compliance with the discovery request would require an unreasonable amount of time and an unreasonable expenditure of money, a protective order is appropriate.

■ Discretion is abused when it is exercised on grounds clearly untenable or to an extent clearly unreasonable. *Ashmead,* 336 N.W.2d at 199. The district court found the information was "not reasonably available to the hospital without undue burden, expense and oppressive obligations being placed on the hospital." The court further found "the questionable utility of this information is substantially outweighed by the drastic steps the hospital would have to take in order to comply with the request."

The record supports the district court's findings. Berg requested production of all medical records for patients for whom Dr. Friedgood ordered an EKG or CIP with an MB fraction, or both, for each year since and including 1980. Over 1700 patient files would have to be examined manually by the hospital in order to identify the patients for whom Dr. Friedgood had ordered the two tests. Further measures to preserve the confidentiality of the patient files would have to be taken prior to Berg's use of the files. Even so, discovery would compromise confidentiality to some extent.

The court based its decision on appropriate grounds and we cannot say that precluding discovery of patient files was clearly unreasonable. Accordingly, the district court did not abuse its discretion in granting the hospital's motion for a protective order. Similarly, the district court did not abuse its discretion in granting Dr. Friedgood's motion for a protective order; compliance on his part would require examination of about 16,000 patient files.

## III. *Motion in Limine.*

■ Berg's next assignment of error regards the denial of his motion in limine to preclude Dr. Friedgood from testifying as to his customary use of the EKG and CIP tests. The denial of a motion in limine cannot constitute reversible error. *Tratchel v. Essex Group, Inc.,* 452 N.W.2d 171, 178 (Iowa 1990). *But see State v. Harlow,* 325 N.W.2d 90, 91 (Iowa 1982) (exception not applicable here). To preserve error after a motion in limine has been denied, it is necessary to make a proper objection at

the time the evidence is offered. *Tratchel*, 452 N.W.2d at 178. The record shows Berg failed to preserve error on this issue. Regardless, the allowance of the testimony was not an abuse of the court's discretion.

### IV. *Misconduct of the Prevailing Party.*

A party may be granted a new trial if misconduct of the prevailing party has "materially affected his substantial rights." Iowa R.Civ.P. 244(b). In ruling on a motion for new trial, the district court has broad discretion. *State v. Burkett*, 357 N.W.2d 632, 638 (Iowa 1984). Generally, improper testimony is not unduly prejudicial if the jury is admonished to disregard it. *Id.* There are instances, however, when improper testimony is so prejudicial that an admonition to disregard it is an insufficient curative. *Id.*

The alleged incident of misconduct occurred during the cross-examination of Dr. Friedgood by counsel for the hospital:

Q. These nurses, Doctor, in the ER, are they good nurses in your experience?
A. Oh, I've known Nurse Todden and Nurse Peitzman really almost since I've been here in town. I've worked with them before Mr. Berg. I've worked with them many times since. You have a very excellent crew of emergency room nurses down there.

You know, Des Moines General has had some financial problems recently. They've been in the newspapers. One of the things that I'm going to—
MR. FOSTER: I'm going to object to that, Your Honor. That has nothing to do with the evidence in this case. That is irrelevant and immaterial, and I move to strike that testimony by this witness.
THE COURT: Sustained. The last part of the last answer will be disregarded by the jury.

We believe the admonition to the jury was sufficient to cure any prejudice that may have resulted from this apparently inadvertent comment. Nothing in the record indicates a prejudicial effect from the isolated reference sufficient to warrant reversal of the district court judgment.

The district court did not abuse its discretion in denying Berg's motion for new trial on this ground.

### V. *Disposition.*

The district court abused its discretion in denying Berg's motion to compel production of the statements prepared by Todden and Peitzman. Even so, Berg is not entitled to a new trial on the basis of the record before us. We simply do not know the contents of the statements. Accordingly, we remand to the district court with instructions to compel production of the statements and then to reconsider Berg's motion for new trial in light of the statements. If prejudice is shown, the court shall grant Berg appropriate relief. *See* Iowa R.Civ.P. 244.

The district court judgment is affirmed as to all other assignments of error. Because we find no error prejudicially affecting the jury verdict for Miller, we affirm the court's judgment for him, but we remand as to the remaining defendants.

Costs are assessed one-third against appellees Des Moines General Hospital, Dr. Friedgood, and Dr. Leong, and two-thirds against appellant.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.